# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FANNIE MAE, | § |
| | § |
| Plaintiff | § |
| | § |
| v. | § |
| | § |
| Capital Senior Living Properties 2 - | § |
| Gramercy, Inc., CSL Bridle Brook, LLC, | § |
| CSL Canton GA, LLC, CSL Charlestown, | § |
| LLC, CSL Dillon Pointe SC, LLC, CSL | § |
| Fort Wayne LLC, CSL Harbor Court, | § |
| LLC, CSL Middletown, LLC, CSL | § |
| Oshkosh, LLC, CSL Peachtree LLC, CSL | § |
| Plainfield, LLC, CSL Richmond Heights, | § |
| LLC, CSL Roanoke, LLC, CSL | § |
| Whitcomb House, LLC, Triad Senior | § |
| Living III, L.P., | § |
| | § |
| Defendants. | |

CIVIL NO. 3:20-cv-2395-K

## AGREED ORDER APPOINTING RECEIVER

Before the Court is the Parties' Agreed Motion for Appointment of Receiver (the "Application") filed by Plaintiff Fannie Mae, against Capital Senior Living Properties 2 - Gramercy, Inc., CSL Bridle Brook, LLC, CSL Canton GA, LLC, CSL Charlestown, LLC, CSL Dillon Pointe SC, LLC, CSL Fort Wayne LLC, CSL Harbor Court, LLC, CSL Middletown, LLC, CSL Oshkosh, LLC, CSL Peachtree LLC, CSL Plainfield, LLC, CSL Richmond Heights, LLC, CSL Roanoke, LLC, CSL Whitcomb House, LLC, and Triad Senior Living III, L.P. (each a "Defendant" and collectively the "Defendants"). The Motion is **GRANTED**. All capitalized terms not defined in this Order Appointing Receiver shall have the meanings ascribed to them in the Application.

By its Application, and in order to facilitate an agreed upon transition of ownership and operations, the Federal National Mortgage Association ("Fannie Mae",

and collectively with the Defendants, the "<u>Parties</u>") seeks the appointment of a receiver to enter upon and take exclusive power, authority and control over the assets, management, operations, maintenance, leasing, repair and preservation of the following properties, real and personal, including the operations of the senior housing communities situated on such properties, except as set forth herein (as fully defined in the Application, each a "<u>Property</u>" and collectively the "<u>Properties</u>"):

| Property Name (Existing Manager[1]) | Property Address | Property Owner/Defendant |
|---|---|---|
| Gramercy Hill (Capital Senior Living, Inc.) | 6800 A St Lincoln, NE 68510 | Capital Senior Living Properties 2 - Gramercy, Inc. |
| The Waterford at Bridle Brook (CSL Bridle Brook, LLC) | 1505 Patton Dr Mahomet, IL 61853 | CSL Bridle Brook, LLC |
| The Waterford at Hidden Lake (CSL Canton GA Management LLC) | 3100 Hidden Valley Dr Canton, GA 30114 | CSL Canton GA, LLC |
| River Crossing Assisted Living (CSL Charlestown Management, LLC) | 2400 Market St Charlestown, IN 47111 | CSL Charlestown, LLC |
| Waterford at Dillon Pointe (CSL Dillon Pointe Management, LLC) | 104 Dillon Dr Spartanburg, SC 29307 | CSL Dillon Pointe SC, LLC |
| Apple Ridge Assisted Living & Memory Care (CSL Fort Wayne Management, LLC) | 3320 E State Blvd Fort Wayne, IN 46805 | CSL Fort Wayne LLC |
| The Harbor Court (CSL Harbor Court Management, LLC) | 22900 Center Ridge Rd Rocky River, OH 44116 | CSL Harbor Court, LLC |
| The Woodlands of Middletown | 3000 Mcgee Ave | CSL Middletown, LLC |

---

[1]   Each "Existing Manager" set forth herein currently manages various aspects of the Defendants' respective businesses under the terms of one or more management agreements (each a "<u>Management Agreement</u>" and collectively the "<u>Management Agreements</u>") entered into between each Defendant and each identified Existing Manager.

| Property Name (Existing Manager[1]) | Property Address | Property Owner/Defendant |
| --- | --- | --- |
| (CSL Middletown Management, LLC) | Middletown, OH 45044 | |
| The Waterford at Oshkosh (CSL Oshkosh Management, LLC) | 1010 & 1110 West Murdock Avenue 1 Oshkosh, WI 54901 | CSL Oshkosh, LLC |
| The Waterford at Oakwood (CSL Peachtree Management LLC) | 4251 Hudson Dr Oakwood, GA 30566 | CSL Peachtree LLC |
| Sugar Grove Senior Living (CSL Plainfield Management, LLC) | 5865 Sugar Ln Plainfield, IN 46168 | CSL Plainfield, LLC |
| The Waterford at Richmond Heights (Capital Senior Living, Inc.) | 261 Richmond Rd Cleveland, OH 44143 | CSL Richmond Heights, LLC |
| The Park-Oak Grove Retirement Community (CSL Roanoke Management, LLC) | 4920 Woodmar Dr SW Roanoke, VA 24018 | CSL Roanoke, LLC |
| Whitcomb House (CSL Whitcomb House Management, LLC) | 245 West St Milford, MA 01757 | CSL Whitcomb House, LLC |
| The Waterford at Edison Lakes (Capital Senior Living, Inc.) | 1025 Park Pl. Mishawaka, IN 46545 | Triad Senior Living III, L.P. |
| The Waterford at Columbia (Capital Senior Living, Inc.) | 9370 Windsor Lake Blvd Columbia, SC 29223 | Triad Senior Living III, L.P. |
| The Waterford at Deer Park (Capital Senior Living, Inc.) | 201 McDermott St Deer Park, TX 77536 | Triad Senior Living III, L.P. |
| Waterford at Pantego (Capital Senior Living, Inc.) | 2650 West Park Row Drive Arlington, TX 76013 | Triad Senior Living III, L.P. |

## FINDINGS IN SUPPORT OF ORDER

A.   Fannie Mae has a valid, enforceable, properly perfected first priority lien and security interest on each Property as described in the Application. Each Defendant

has failed to pay certain amounts due under the Notes and is in default for failure to pay such amounts. As a result of each Defendant's failure to timely pay all amounts due and owing, an "Event of Default" exists under Fannie Mae's Loan Documents with each Defendant. As indicated by their counsel's signature hereto, each of the Defendants consents to the relief granted herein. No further notice is required under the Loan Documents.

B.     Fannie Mae's liens extend to Defendants' real and personal property of any kind that is owned by Defendants as described in Fannie Mae's Loan Documents. Fannie Mae's liens do not extend to real and personal property that may be in the possession of Defendants or located at the Properties, but is owned by third parties.

C.     Fannie Mae is the owner and holder of the Notes, each of which is secured by one or more of the Properties.

D.     Each Mortgage or Deed of Trust, as applicable, provides that upon the occurrence of, and during the continuance of any Event of Default: (i) Fannie Mae may enter into or upon each Property or any part thereof to take possession of each Property, either personally or through its agents; (ii) the applicable Defendant's right to collect rents shall automatically terminate and Fannie Mae shall without notice be entitled to all rents as they become due and payable, including rents then due and unpaid; and (iii) Fannie Mae may apply for the appointment of a receiver for each Property. Each Mortgage or Deed of Trust, as applicable, further provides that upon the occurrence of, and during the continuance of any Event of Default, should Fannie

Mae apply for the appointment of a receiver, each Defendant has expressly consented to the appointment of a receiver.

E.      Each Mortgage or Deed of Trust, as applicable, provides that upon the occurrence of, and during the continuance of, any Event of Default, Fannie Mae may: (i) declare the unpaid debt to be immediately due and payable; and (ii) institute proceedings for the complete foreclosure of the Mortgage or Deed of Trust, as applicable.

F.      Fannie Mae has valid claims against the Defendants, which are secured by the Properties.  Due to the nature of each Property (which includes real property), and the requirement to provide advance notice to State regulators of a change or change of control of the operator holding the applicable licenses, it may take months to effectuate sales or foreclosures of the portions of the Properties constituting real property, during which time rents from the Properties (which are part of Fannie Mae's collateral) will be lost.  Because those rents cannot be recovered after they are spent, foreclosure is an insufficient remedy, and Fannie Mae's rights will be frustrated and diminished in value unless a receiver is appointed.  No less drastic equitable remedy is available.  A receiver is therefore needed to take control of each Property and preserve the rents pending foreclosure of such Property.

## ORDER APPOINTING RECEIVER

In light of the Application and the facts in support the Application, it is therefore ORDERED, ADJUDGED, and DECREED that:

1.     **Appointment of Receiver.**   Michael F. Flanagan of Kansas City, Missouri, who is not a party, attorney, or other person interested in this action, and otherwise qualified to serve as receiver under applicable law, is appointed receiver of the Receivership Estate (as defined below) for all purposes (the "Receiver"), with all of the powers and obligations set forth herein.

2.     **Bond of Receiver.** The Receiver shall file with the Clerk of this Court a cash deposit or bond in the penal amount of amount of $10,000.00 (the "Bond")[2], on the Receiver's pledge that he will discharge the duties of Receiver in this action and obey the orders of this Court. The filing of Receiver's Bond with this Court shall take place within ten (10) business days after the entry of this Order. This Order shall not be effective until the Bond and oath are filed.  Once this order is effective, Receiver shall take and keep possession, custody, and control of the Properties subject to the terms of this Order.  The cost of the Receiver's Bond shall be an expense of the receivership estate, and the Receiver shall be entitled to be reimbursed for the costs associated with obtaining said Bond (including, without limitation, any premium for such Bond) from revenue generated from the Properties. The Bond shall be maintained in full force and effect during the course of the Receivership and continue until the Receiver files and obtains court approval for his final account and report, the expiration

---

[2]   In the event the Receiver is unable to promptly post a bond, he may, in the alternative, post a $10,000 cash deposit. Such deposit shall be deposited into the Registry of Court. Should the Receiver subsequently obtain a bond in the amount of $10,000, the Receiver shall file a notice of such bond with the Court, at which time the Clerk of Court shall promptly return the $10,000 cash deposit without further Court order, upon the Receiver producing a file-stamped copy of the notice of bond to the Clerk.

of any time periods to appeal the approval, or the resolution in favor of the Receiver of the appeal if one is filed. Upon filing the Bond and oath (which may be in the form of a declaration pursuant to 28 U.S. Code § 1746), the Receiver shall be vested with all the powers and responsibilities of a receiver as provided by law and as specifically set forth herein; provided, however, that the Receiver shall not be deemed to have commenced his responsibilities as receiver hereunder, including possession of the Receivership Estate (as defined below), until he has delivered, by email, to counsel for the Parties a written notice declaring the date and time at which his oversight and control of the Defendants and possession of the Receivership Estate will begin (the "Commencement Notice"). Within three business days following the delivery of the Commencement Notice, the Receiver may, with the approval of the respective manager of the Property (i.e., the "Existing Manager"), notify the residents of the Properties (as defined below) of the appointment of the Receiver.

3.   **The Receivership Estate.**   The Court shall have jurisdiction over the Receiver and the Receivership Estate, which includes all tangible and intangible assets of each of the Defendants including: all real and personal property owned, leased or otherwise in the possession of the Defendants including the Properties and all offices owned, leased or occupied by the Defendants or the Existing Managers at the Properties (together with the Properties, the "Receivership Premises"), all funds, bank accounts, all litigation claims, accounts receivable, computers, all media on which information is stored electronically, vehicles, equipment, inventory, furniture, furnishings, licenses,

permits, books, records, and documents, excluding any "Privileged Communications" as defined in paragraph 6 (collectively, the "Receivership Estate").

4.     **Defendants' Existing Managers, Managers, and Board of Directors.** The Existing Managers and Defendants' managers and boards of directors (the "Boards") shall remain in existence. The Receiver or his representative shall regularly provide status reports to the designated representative of the manager as to material developments concerning the Receivership Estate, and shall timely provide any documents or information reasonably requested by the designated representative of the manager or the applicable Board upon written request.

5.     **Receiver's Powers and Duties.** Immediately upon the later of the filing of the Receiver's oath and bond and delivery of the Commencement Notice, the Receiver shall, without further order of this Court unless specified, immediately have the following powers and legal responsibilities:

　　　a.  **The Receivership Estate.** The Receiver shall take physical custody and possession of the Receivership Estate subject to the terms of this Order. Notwithstanding the foregoing, the Receiver shall not exclude the Existing Managers, the licensed operators or any related parties from being physically present at the Properties unless and until the Receiver has obtained, with respect to each Property, an alternative licensed operator to take control of and operate such Property, in which case, the Receiver shall replace the Existing Manager subject to the terms of this Order. The

Parties agree to fully cooperate with each other to achieve the mutual goals of a prompt, consensual transfer of the Properties, while minimizing the impact of the receivership on the management and operation of the Properties and its Residents.

b. **Management of Properties and Operations**. The Existing Managers shall continue to manage all of the ordinary course operations of the Properties, subject to and consistent with the terms and conditions of the Existing Managers' current contract with the Defendants (the "Existing Management Agreements"). The Existing Managers shall notify the Receiver regarding any matters that would vary from the current management and operations of the Properties, as modified by the terms of the Budget (as discussed below). In accordance with the Existing Managements Agreements, the Existing Managers shall regularly provide to the Receiver updates and reports relating to management or operation of the Properties, and the Receiver and shall provide to the designated representatives of the Existing Managers any and all documents or information relating to the management or operation of the Properties not contained in such regular updates or reports, in each case, within three (3) business days following written request. For purposes hereof, any action or expenditure by Existing Managers contemplated by a line item in the Budget and consistent with budgeted amounts (subject to

permitted Variances) shall be deemed to be in the ordinary course of business (as such capitalized terms are herein defined). Notwithstanding this provision, in consultation with Fannie Mae, the Receiver shall be permitted to retain (and shall use all commercially reasonable efforts to retain expeditiously) a replacement management company (the "New Manager") for each Property, and contract with that New Manager on commercially reasonable terms, both without further Court order. The New Manager will not replace the Existing Manager (or its affiliates) at each Property unless and until it or a new operator has obtained its own license with respect to such Property in accordance with all applicable State regulations. For the avoidance of doubt, no manager other than the Existing Manager shall be able to operate under the licenses currently in effect and held by Defendants or its affiliates. Any New Manager shall have the same rights and responsibilities under this order as the Existing Manager.

c. <u>Keys</u>. The Receiver shall have non-exclusive access to all keys, lock combinations, access cards and other means to access locked areas relating to the Receivership Premises, including all lockboxes and locked drawers and cabinets, except for keys and access cards in the possession of residents of the Properties. The Receiver may make copies of such keys, access cards, and other means to access locked areas relating to the

Receivership Premises for his use in the administration of the Receivership Estate.

d. **Books and Records**.  The Receiver shall have non-exclusive access to all non-Privileged Communications in the books and records of the Defendant related to the Receivership Estate, whether in hard copy or electronic form, including, but not limited to, all financial records, tax returns, and any and all documents under the control of, or prepared by any third party on behalf of the Defendant (the "Books and Records"). The Receiver may make copies of such non-Privileged Communications in the Books and Records for his use in the administration of the Receivership Estate.

e. **Bank Accounts**.   The Receiver, in his sole discretion and after consultation with Existing Managers, may continue to use the Defendants'/Existing Managers' bank accounts or may open one or more new bank accounts under the Receiver's control (except as may be prohibited by applicable laws relating to Medicaid payments), at a bank or other suitable financial institution (the "Receiver Account"); provided, however, that Existing Managers, the Receiver and the Defendants shall ensure the continued deposit of all of the Defendants' gross revenues into such accounts.   Existing Managers shall have access to any Receiver Account, subject to the terms of this Order.   The Defendants and their

agents and employees shall provide the Receiver with all information necessary for the Receiver to take control of each of the Defendant's bank accounts and to open and maintain the Receiver Account, including all login information necessary to access the Defendants' bank accounts through the website(s) of the bank(s) where such accounts are maintained.   The Receiver and Existing Managers shall be the sole signatories on all of the Defendants' bank accounts.   Any withdrawals from the Defendants' bank accounts or the Receiver Account by the Existing Managers and the Receiver shall be in accordance with the Budget (as defined below) or as otherwise expressly provided in the Order.

f.   **Revenues**.   The Receiver shall, in conjunction with the Existing Managers, monitor cash management processes, including processing of payments and the preparation of financial reports.   The Existing Managers, in collaboration with the Receiver, shall have the authority to demand, collect and receive all accounts receivable, monies, funds and payments related to the operations of the Properties, and shall ensure that all such amounts are properly received, collected and recorded.   All monies coming into the possession of the Receiver and not reserved or expended for any purposes authorized hereunder shall be deposited in the Receivership Account.

g. **Budget.** Concurrently with the filing of his inventory, pursuant to this Order, the Receiver shall, following consultation with the Existing Managers and the Defendants, provide the Parties with an initial cash flow budget, which shall be acceptable to Fannie Mae, comprising a bi-monthly cash flow budget for each Property, on a monthly basis, for the period commencing upon the date the Receiver's inventory is filed (the "Budget Initiation Date") and continuing through October 30, 2020 (the "Initial Budget", and as amended, the "Budget"). The Receiver shall, in consultation with the Existing Managers and the Defendants, update the Initial Budget (each, an "Amended Budget") no later than October 30, 2020 by providing a new bi-monthly cash flow for each month for the two (2) months after the period covered by the Initial Budget, or the Amended Budget, as applicable, for acceptance by Fannie Mae. The Budget shall include detailed operating assumptions, projected receipts, disbursements, entrance fee collections, entrance fee refunds, cash balances, and accounts receivable information in a form attached hereto as **Exhibit 1**. Absent further order of the Court, the Existing Managers and the Receiver shall pay only those amounts as permitted by the Budget; provided, however, that Existing Managers and the Receiver shall be permitted to exceed the amounts set forth in the Budget to pay categories of expenses listed in the Budget to the extent that such

payments would not cause the aggregate expenditures to exceed either (the following constituting "Variances"): (x) one hundred ten percent (110%) of the total budgeted expenses for that same period or (y) one hundred twenty percent (120%) of the amount budgeted for that same line item for that same period (each comparison period, a "Measuring Period") and *provided further, however*, that if the Receiver, in the exercise of his business judgment, determines that he must make expenditures in excess of the amounts as permitted by the Budget for purposes of resident life, health, or safety, the Receiver is authorized to do so and should immediately notify Fannie Mae and Defendants.  Following the entry of the Receivership Order, Existing Managers shall deliver to Fannie Mae and the Receiver on the 20th of each calendar month at a minimum (i) a budget-to-actual report comparing actual receipts and disbursements to the amounts budgeted in the preceding month and (ii) occupancy statistics.

h.   **Payment of Expenses and Use of Checks.**  The Existing Manager shall pay the normal, ordinary and necessary operating expenses of the Properties, in accordance with the Budget (except as otherwise expressly provided in this Order), from the rents and other revenues collected from the Properties.  The Receiver shall pay any and all operating expenses of the Properties which are outside of the ordinary course of business and

any and all expenditures and expenses of the Receivership Estate, in each case, in accordance with the Budget or with the consent of Receiver. The Receiver is also authorized to employ and pay the Existing Managers, property managers, property operators, accountants, and other persons and professionals as the Receiver deems appropriate to perform his and their duties, without further order of this Court, provided however that the Receiver may only replace the Existing Manager with respect to each Property, when and if it has a suitable, licensed replacement Operator therefor (and the Existing Managers and their affiliates are relieved and released from their obligations to operate and/or control such Property, including, without limitation, by terminating the applicable Existing Management Agreement). Neither the Receivership Estate, the Receiver nor Fannie Mae shall be liable for any expenses with regard to any Property which are incurred prior to the Receiver taking possession of such Property, provided however that the Existing Manager shall be entitled to pay, in the ordinary course of business, amounts accrued pre-receivership that include amounts which are within the normal billing cycles. Subject to the Budget, the Existing Managers and the Receiver shall have the authority to write checks and expend funds for the purpose of making any payments or distributions required or permitted to be made hereunder, including, without limitation, expenses incurred in

connection with the operation, preservation and maintenance of the Receivership Estate, bank service charges, insurance, accounting and other professional services, postage costs and courier and other deliver costs, inventory, office expenses, rent, security deposits, repairs, supplies, taxes, utilities, wages, and renewals of the Receiver's bond.  For the avoidance of doubt, the Existing Managers shall write checks and expend funds to pay liabilities incurred in the ordinary course operations of the Properties subject to the Budget,, and obligations imposed by federal, state or local statutes or regulations, or imposed by regulatory authorities, or, to the extent practical under the circumstances, with the permission of the Receiver, emergencies resulting in life, health and safety issues.  The Receiver shall, if practicable, provide the Existing Managers with notice 48 hours prior to writing any checks in excess of $50,000 for any liabilities incurred outside the ordinary course of business.

i.  **Insurance**.  The Defendants shall promptly following the filing of this Order (a) provide the Receiver with copies of all existing insurance policies for the Defendants, the Properties, and/or the assets of the Receivership Estate, and (b) name the Receiver as an additional insured on any existing insurance policies for the period that the Receiver shall be in possession of the Receivership Estate.  The Receiver shall determine, following consultation with the Defendants and Fannie, whether, in the

Receiver's judgment, there is sufficient insurance coverage for the Receivership Estate. If sufficient insurance coverage does not exist, the Receiver shall immediately notify the Parties and the Defendants, and Existing Managers and the Receiver shall have sixty (60) days to procure sufficient insurance for the Receivership Estate. The Receiver shall name himself as the insured and Fannie Mae as additional insureds and as loss payees for any policies he procures. No insurer may cancel its existing policy as a result of the appointment of the Receiver without prior order of this Court. No Party or the Existing Managers may cancel, reduce the limits of or modify any and all insurance coverage currently in existence with respect to the Defendants and/or its assets, except as otherwise provided herein or when the Existing Manager is replaced by the New Manager. For the avoidance of doubt, all insurance premiums, and all deductibles payable under the applicable insurance policies shall be considered ordinary course expenditures and payable in accordance with the Budget and otherwise from the Receivership Estate.

j. **Borrowings**. The Parties acknowledge that some of the Properties currently operate, and are expected to continue to operate during this receivership, at a cash flow deficit. The Receiver, Defendants, and Existing Managers shall not co-mingle cash receipts from the Properties. However, without further order of this Court, the Receiver may, on behalf

of the Receivership Estate, from time to time, borrow funds from Fannie Mae, and Fannie Mae must loan to the Receiver, as necessary to perform his duties hereunder and to otherwise ensure sufficient funds for those amounts set forth in the Budget and/or to otherwise meet any and all obligations or requirements imposed by regulatory authorities (including but not limited to legal counsel fees), and may issue Receiver's certificates of indebtedness ("Certificates") to evidence such borrowings, and the Receiver shall be authorized to execute such other documents as requested by Fannie Mae evidencing the advance of such funds (the "Lending Documents"). Any such funds advanced by Fannie Mae and evidenced by the issuance of Certificates shall be considered advances made under the Lending Documents between the Receiver and Fannie Mae. The obligations under each Certificate shall be a super-priority administrative claim against the Receivership Estate, and shall be secured by a perfected first priority security interest in and lien on all of the Defendants' property, including, without limitation, all of the Defendants' existing and future acquired property interests of any nature whatsoever (including assets of the Receivership Estate), real and personal, tangible and intangible, including, without limitation, owned and leased real property, any other interests in real property, accounts receivable, inventory, equipment, cash, deposit accounts, investment

property, general intangibles, payment intangibles, supporting obligations, instruments, documents, chattel paper, commercial tort claims, insurance, licenses and permits, intellectual property, trade secrets, goodwill, machinery, contract rights and tax refunds, and all proceeds of the foregoing. Fannie Mae shall be authorized to take such actions, and record such documents, as it deems appropriate to reflect the granting and perfection of the foregoing liens.

k. **Foreclosure of Assets of the Receivership Estate.** Without further order of this Court, Fannie Mae with advanced notice to the Defendants as required by the existing loan documents and applicable law may foreclose by judicial or non-judicial means its interests in the Receivership Estate.

l. **Contracts.** The Existing Manager will continue to operate and perform under the Existing Management Agreements, as well as any contracts, leases or other agreements required to operate the Properties in the ordinary course of business. The Existing Managers may negotiate, make, enter into, or modify contracts or agreements of or related to the ordinary course operations of the Properties and the Receivership Estate subject to the terms of the Budget and only with approval of the Receiver. The Receiver may negotiate, make, enter into, or modify contracts or agreements of or related to matters outside the ordinary course operations

of the Properties and the Receivership Estate, and may immediately terminate any existing contract, agreement, lease or instrument of the Defendants related to matters outside of the ordinary course of operations of the Defendants and the Receivership Estate which is determined not to be beneficial to the Defendants; provided that, unless any such contract, agreement, lease, or instrument relates to a foreclosure sale process, the Receiver shall first consult with the Existing Managers. Following consultation with the Receiver, the Existing Managers may terminate any existing contract, agreement, lease or instrument of the Defendants relating to the ordinary course operations of the Properties which is determined by the Existing Managers not to be beneficial to the Properties. The Receiver shall not be bound by any contract between the Defendants and any third party that the Receiver does not expressly assume in writing. The Receiver shall have the authority to sign any and all documents on behalf of the Defendants, provided however that the Receiver shall consult with Defendants prior to executing any documents on behalf of Defendants, and shall provide copies of any and all documents signed by them immediately to the Defendants.

m. **Litigation.** The Receiver shall have the authority to negotiate and settle claims that are property of the Receivership Estate.

n. **Mail**.  The Existing Managers shall take any and all steps necessary to retrieve, collect and review all non-Privileged Communications in mail addressed to the Defendants, and is authorized to instruct the United States Postal Service to reroute, hold, and/or release such mail to the Existing Managers.  The Existing Managers shall provide to the Receiver photocopies of all non-Privileged Communications in mail addressed to the Defendants that may relate to the Receiver's duties established hereunder or to the Receivership Estate.

o. **Tax ID**.  The Receiver shall have the authority to use any federal tax identification number(s) of the Defendant to carry out his duties established hereunder.

p. **Licenses and Permits**.  Nothing contained within this Order shall authorize the Receiver to use any of the Defendants' Medicaid Provider numbers.  The Receiver may apply for, obtain, and pay any reasonable fees for any necessary license, permit or other governmental approval relating to the Properties, the Receivership Estate or the operation of either of the foregoing (and all such expenses shall be considered ordinary course expenditures payable from revenues generated from the Properties or as otherwise provided by Fannie Mae in accordance with this Order), and confirm the existence of, and do all things necessary to protect and maintain, any such licenses, permits or governmental approvals.

q. **Risks.** Subject to the Budget and the expressed terms of this Order, the Receiver shall have the authority to incur, in his official capacity, the risks and obligations ordinarily incurred by owners, Existing Managers and operations of businesses similar to the Properties, provided that no risk or obligation so incurred shall be the personal risk or obligation of the Receiver.

r. **Receiver's Professionals.** Subject to the express terms of this Order, the Receiver is authorized to employ legal counsel to assist him in the discharge of his duties without the need for a Court order. In addition, upon further order of this Court, the Receiver may retain such accountants, consultants, managers, brokers, appraisers and other professionals as are necessary to the proper discharge of the Receiver's duties, and may pay such professionals reasonable fees from the funds of the Receivership Estate in accordance with the Budget. Notwithstanding the foregoing, the Receiver is authorized, without Court approval, to employ legal counsel to assist with any regulatory issues that may arise in connection with the Receivership Estate, with such legal fees not to exceed $100,000, absent further Court order.

s. **Improvements.** The Existing Managers or the Receiver may, to the extent provided for in the Budget or otherwise with the consent of Fannie Mae or required by applicable regulations, make such capital expenditures

necessary or desirable relating to the operations and maintenance of the Properties. The Receiver may, following consultation with the Defendants and the Existing Managers, and subject to the Budget or otherwise with the consent of Fannie Mae, make any alterations, renovations, repairs, improvements, or replacements of or to the Properties or the Receivership Estate that the Receiver deems necessary or otherwise required by the state regulator.

t. **Additional Powers.** The Court vests the Receiver with any and all authority necessary or appropriate, at law and in equity, to carry out the intent of this Order.

6. **Cooperation by Defendants.** The Defendants and the Existing Managers and their respective agents, directors, officers, employees, attorneys, representatives, affiliates, all other persons and entities who are successors in interest to, or are acting in concert with them, and all persons and entities in control of, in possession of, with knowledge of, or overseeing any of the Defendants' assets, including, but not limited to its books and records: (a) shall fully cooperate with the Receiver and his professionals, representatives and their agents in connection with the Receiver's performance of their duties and the exercise of the authority granted to the Receiver herein (at no cost to Defendants, Existing Managers and such other related parties which are not paid out of the Receivership Estate); and (b) are hereby enjoined and restrained from interfering with the Receiver carrying out his duties under this

Order and any further orders of the Court.  Notwithstanding any provision of this Agreed Order, nothing contained in this Agreed Order shall provide the Receiver access to any of Defendant's privileged information (including by way of example and not limitation, emails, documents, and conversations) subject to the Attorney/Client evidentiary privilege or Attorney Work Product Doctrine (a "<u>Privileged Communication</u>").  Should the Receiver discover that he has been provided or accessed a Privileged Communication, he shall advise counsel for Defendants by email, identify the Privileged Communication, destroy any copies he has made, and refrain from using any knowledge of the Privileged Communication in any manner or for any purpose.  Nothing contained in this Agreed Order shall waive the Defendant's Attorney/Client evidentiary privilege, the Attorney Work Product Doctrine, nor the  Health Insurance Portability and Accountability Act of 1996 ("<u>HIPAA</u>") or similar privacy laws with which the Receiver shall comply.  The Receiver shall not have access to any patient care information protected under HIPAA.

7.    **Cooperation by Banks.**  Each institution where the Defendants or the Existing Managers maintain accounts is ordered, except as expressly prohibited by applicable laws or regulations, to allow the Receiver to take over the Defendants' accounts, to transfer control to the Receiver of the funds and accounts, and to provide account statements and other account documents for such accounts at the Receiver's request.  The Receiver is authorized to execute new signature cards for such accounts to ensure the transfer of control of such accounts to the Receiver.  Upon the Receiver's

request and presentation of this Order, each institution where the Defendants maintain accounts is ordered to delete all current designated signatories on such accounts except for those signatories identified by the Receiver, including Existing Managers.

8. **Addresses for Notice.** The Parties shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in this action and their counsel, to the extent such information is available. The Parties shall give notice to the Receiver of any service of process affecting the Receivership Estate or any correspondence, notices, or other communications received on behalf of the Defendant.

9. **Suit Against Receiver.** All parties and persons are hereby restrained and enjoined, without the prior approval of this Court, from taking any of the following actions, except in this Court, unless otherwise provided herein or in a subsequent order of this Court, consistent with general principles of equity and in accordance with its ancillary equitable jurisdiction in this matter:

> a. The commencement or continuation, including the issuance or employment of process, of any judicial, administrative, or other proceeding against the Receiver or any Receiver-Related Person, or the Receivership Estate, arising from the subject matter of this proceeding;
>
> b. The enforcement against the Receiver, property of the Receivership Estate or the Defendants, of any judgment obtained before the date this proceeding was commenced;

c. Any act to obtain possession of property of the Receivership Estate or property from the Receivership Estate or to exercise control over property of the Receivership Estate;

d. Any act to create, perfect, or enforce any lien against property of the Receivership Estate;

e. Any act to collect, assess, or recover a claim against the Receiver or the Receivership Estate that arose before the date this proceeding was commenced; and

f. The setoff of any debt owed by the Defendants or the Receivership Estate, or secured by assets of the Receivership Estate, against any claim against the Defendants or the Receivership Estate.

10. **No Personal Liability.** Michael F. Flanagan and Flanagan & Associates, LLC, through and by Michael F. Flanagan, is acting solely in its capacity as Receiver and, except as provided by applicable law, no risk, obligation, liability or expense incurred shall be the personal risk, obligations, liability or expense of Mr. Flanagan or Flanagan & Associates LLC, but instead shall be the risk, obligation, liability or expense of the Receivership Estate.

11. **Security Deposits; Resident Contracts.** Any security or other deposits which residents, tenants or others have paid to the Defendants or their agents shall be turned over to the Receiver with such funds being utilized in accordance with the terms and conditions of the applicable resident contracts. Any other security or other

deposits that residents, tenants or others have paid or may pay to the Receiver, if otherwise refundable under the terms of the leases or agreements with such residents, tenants or others, shall be expenses of the Receivership Estate and shall be refunded by the Receiver in accordance with such leases or agreements.

12.  **Utilities.**  Without prior order of this Court, no utility companies, including, but not limited to, electricity, gas, water, sewage, waste water, recycling, garbage, telephone, television, cable and internet providers, may terminate service to the Defendants and/or the Receivership Estate as a result of nonpayment of obligations incurred prior to the date of the Commencement Notice, nor may any utility demand an additional deposit as a condition to the continued provision of service.

13.  **HIPAA**.  This Order constitutes a Protective Order under <u>HIPAA</u>. Receiver and the Receiver's respective agents, representatives, and anyone acting on their behalves ("<u>Receiver Representatives</u>"), shall be permitted to access confidential patient information, pursuant to the terms of this Order.  Receiver and the Receiver Representatives shall implement the following procedures to safeguard the confidentiality of protected health information ("<u>PHI</u>"), as defined under HIPAA:

> a. The Receiver and Receiver Representatives shall be prohibited from using or disclosing the PHI for any purpose other than for purposes of fulfilling the Receiver's responsibilities under this Order. The Receiver and Receiver Representatives shall use only the minimum necessary confidential information for such purposes;

b. The Receiver and Receiver Representatives shall implement appropriate safeguards to prevent review, use, or disclosure of PHI, including subjecting the Receiver and Receiver Representatives to the same standards regarding confidentiality of patient records as Defendants under applicable laws, including HIPAA;

c. The Receiver and Receiver Representatives shall mitigate (to the extent reasonably practicable) any harmful effect that is known to them from a use or disclosure of PHI by them in violation of the requirements of this Order;

d. The Receiver and Receiver Representatives must not make any paper or electronic copies of, or otherwise acquire, any PHI in the course of their duties, such that it is not necessary for them to return or destroy the PHI received at the end of all litigation; and

e. Any other person with whom the Receiver retains, employs, or contracts, or who otherwise acts as an agent for the Receiver, shall abide by the same restrictions and conditions that apply to the Receiver with respect to PHI.

14. Reasonably prior to Receiver implementing any change in the operator or manager of any Property or retaining any new operator or manager of any Property, the Receiver shall (a) confirm in writing to Defendants and the Existing Manager that the new manager/operator has obtained all required licenses and permits needed to operate the Property under applicable law for the jurisdiction where the Property is

located and provide the Existing Managers with copies of said licenses and permits, (b) execute an appropriate joint notice with Defendant and the Existing Managers required under applicable state law regarding the change in the controlling person over each Properties, and (c) send the joint notice, along with a cover letter explaining that the notice is an update pursuant to this Order and summarizing the anticipated change in the operator, manager and/or controlling person of such Property, to each applicable state regulatory agency.   The Receiver shall consult with and coordinate these communications with Defendants to ensure the morale, health and welfare of the Properties' residents and tenants and the interests of their families are considered when such communications are made.

15.   Within ten (10) days of this Order, the Receiver shall, pursuant to 28 U.S.C. § 754, file copies of Fannie Mae's Complaint and a copy of this Order in the federal district court for each district in which a Property is located.

16.   Upon taking charge of each Property as authorized by the immediately preceding paragraph, the Receiver shall comply with all local, state and Federal regulations, including but not limited to U.S. Department of Health and Human Services rules and regulations regarding the safety of residents during the COVID-19 pandemic crisis.

17.   The Receiver is authorized and directed in coordination with Defendants to contact any regulatory authority responsible for a Property and to provide a copy of this Order with three business days' written notice to Defendants.   The Receiver may

file documents with applicable regulatory authorities and pay all necessary fees. The Receiver is authorized to hire and retain professionals, including legal counsel, necessary to assist with such filings without further order of this Court.

18.    The Receiver shall, subject to the limitations expressly provided in this Order, retain possession of each Property until the earlier of further order of this Court, a sale of such Property or judicial or nonjudicial foreclosure of such Property by Fannie Mae, with the express understanding that judicial or nonjudicial foreclosure of a Property may proceed without further order of the Court either judicially in a court of competent jurisdiction or nonjudicially. Fannie Mae may also accelerate any of the indebtedness owed by any Defendant to Fannie Mae in accordance with applicable law and Fannie Mae's Loan Documents.

19.    The Receiver shall be paid a monthly fee equal to $2,500 per month per Property for the first three (3) months, and $1,500 per month per Property thereafter. All of the fees approved in this paragraph are to be paid as a priority from the rents and revenues of each Property.

20.    The Receiver shall initially engage the Existing Managers to operate the Properties in accordance with the Existing Management Agreements (as modified in accordance with the terms of this Order), and may engage New Managers on any terms determined to be reasonable by Receiver, subject to the limitations expressly provided herein, including but not limited to the obligation that a new operator with the appropriate license must be obtained prior to or simultaneously with the engagement

of a New Manager, subject to the prior approval of Fannie Mae. The Receiver shall use his commercially reasonable best efforts to expediently select a duly licensed new operator and a New Manager with respect to each Property. In the event that the Receiver is unable to select and engage a New Manager for any Property by November 30, 2020, and there are material changes in the financial situation at the applicable Property, the Existing Manager shall have the right to petition the Court for (i) a revision to the fees charged pursuant to the Existing Management Agreement, or (ii) termination of, the Existing Management Agreement. The Receiver shall cooperate with Fannie Mae in locating and licensing new operator(s) for each of the Properties and the Receiver is authorized, as and when such new operators are secured and licensed with respect to each Property, to enter into and perform services under an Operations Transition Agreements (each an "OTA") and/or purchase and sale agreement(s), as applicable, with each such new operator or new owner to ensure the uninterrupted care for residents at subject Property and the orderly transfer of operations, subject to and in compliance with all applicable laws, rules and regulations relating to the transfer of operations for senior housing communities. The OTA shall be in commercially reasonable form and substance acceptable to the applicable Parties. The Receiver is authorized to pay any amounts owing pursuant to any OTA, as applicable.

21.     Each Defendant shall or shall cause its Existing Manager to continue to provide all necessary services required under each Existing Management Agreement or

applicable licensing or regulatory requirements to operate and manage its Property under applicable law and shall fully cooperate with the Receiver in performing these services, and in the orderly transition to any new operator or property manager, and shall execute promptly all applications, assignments, consents, and documents requested by the Receiver to facilitate such transition, provided that, in all cases, appropriate funds are provided to Existing Managers to carry out such obligations. The Receiver is further authorized to compensate any such Existing Manager in accordance with the provisions of Management Agreement (as modified in accordance with this Order). Upon successful transition to the New Manager, the Receiver shall terminate the Management Agreement upon ten (10) days' notice and payment of any management fees accrued after the date of entry of this Agreed Order, unless the Parties agree otherwise. The Parties agree that any events that might constitute an "event of default" as that term is currently defined in the existing contract with the Existing Manager shall not excuse payment of any management fees owed to the Existing Manager.

22.    No later than the 25th day of each month, the Receiver shall make an accounting of all rents and revenues collected and all expenses paid for the previous month and shall file said accounting with the Court and shall serve upon Fannie Mae's counsel and Defendants' counsel a copy of said accounting. The Receiver shall file a final report within ninety (90) days after the termination of the receivership unless otherwise ordered by the Court.

23.     Within ninety (90) days after the termination of the receivership, the Receiver shall pay to Fannie Mae all receipts remaining, if any, after payment of the items set forth herein, to be applied to the indebtedness of the Defendants to Fannie Mae, pursuant to the Notes. The Receiver is authorized, but not required, to make any or all of the payments set forth in this paragraph during the pendency of the receivership.

24.     In the event the Receiver desires to make any repair to any Property or pay any unforeseen operating expenses other than those ordinarily and normally incurred in the operation of the business or which are required to address life safety concerns, the Receiver shall so notify Fannie Mae, directly or through counsel, informing Fannie Mae of the nature and approximate cost of the desired expenditure. Fannie Mae shall respond within three (3) business days of such notice, either authorizing such expenditure or joining with the Receiver in a request for a hearing before the Court to determine whether such expenditure should be authorized. The provisions of this paragraph do not apply to emergency repairs, life safety repairs, or repairs required by applicable city, municipal, or state ordinance or code or as directed by federal, state or local regulatory authorities.

25.     **No Impairment**. Fannie Mae's title to and security interest in the rents, issues, profits, and revenues of each Property shall not be impaired by the appointment of the Receiver.

26. **Liability:**

a. Except as provided otherwise in this Order, neither Fannie Mae nor the Receiver shall be liable for any obligations (including, without limitation, obligations between, on the one part, Defendants, and, on the other part, one or more employees, directors, agents, shareholders, creditors, members, and/or representatives of Defendants), whether or not such obligations have been liquidated and whether or not such obligations are conditional, that arose prior to this Order and that relate in any way to the acquisition, ownership, maintenance, operation, financing, sale or use of the any of the Properties and of any part of it. If obligated, Defendants shall remain liable for all obligations of the Properties.

b. This Order shall not impose upon either Fannie Mae or the Receiver any liability to any party for any claims, actions, or causes of action relating to any of the Properties that arise out of or relate to events or circumstances occurring prior to the appointment of the Receiver (including but not limited to any liability resulting from the performance of services rendered by third parties on behalf of Defendants, and any liability to which Defendants are currently or may ultimately be exposed under any applicable laws pertaining to the ownership, management, and operations of any of the Properties).

c. To the extent the Receiver continues the services of any current

employees, agents, or other personnel with respect to any of the Properties, the Receiver shall not be liable for any claims of any nature whatsoever of such employees, agents, or other personnel that arose prior to the date and time of the entry of this Order, which claims include, but are not limited to, liabilities related to unemployment and/or worker's compensation claims, claims or violations related to Employee Retirement Income Security Act of 1974 or any other claims relating to employee benefits or employee benefits plan.

d.   Except for acts of willful misconduct, gross negligence or fraud, neither the Receiver nor any of his employees, agents, representatives, attorneys, officers, directors, partners, shareholders, members, affiliates, successors or assigns (the "Receiver-Related Persons") shall be liable for any loss or damage incurred by the Receivership Estate, or any of the Defendants, the Defendants' clients, patients or associates, or their respective subsidiaries, affiliates, officers, directors, agents and employees or equity holders because of any act performed or not performed by the Receiver or Receiver-Related Persons in connection with the discharge of the Receiver's duties and responsibilities hereunder..

27.   **Not Deemed Owners**.  Neither the Receiver nor Fannie Mae shall be deemed in any way to be an owner or operator of any of the Properties.  Except for claims arising from the Receiver's willful misconduct, gross negligence, or fraud, the

Receiver shall have no liability as to any claims, actions, or causes of actions of any third parties who have or would have claims against Defendants or any officer, director, or shareholder thereof (including, without limitation, any claims under any federal or state environmental laws).

28.   **Further Instructions**.   The Receiver, the Parties and the Defendants may, from time to time, and upon 72 hours' notice to each other (or, in the case of an extreme emergency, on 24 hours' notice), petition the Court for instructions in furtherance of this Order and any further orders the Court may make with respect to the Receivership Estate.

29.   **Inventory**.   Within thirty (30) days of the date hereof and with the assistance of the Existing Managers, the Receiver shall file an inventory of all assets of the Receivership Estate, including all real property, tangible personal property and intangible personal property, but excluding the personal property of any residents of the Property.

IT IS FURTHER ORDERED that money coming into the possession of the Receiver and not expended for any of the purposes authorized herein shall be held by the Receiver subject to such orders as this Court may hereafter issue.

IT IS FURTHER ORDERED the Receiver shall not be responsible for the preparation and filing of any tax returns for Defendants or any affiliate(s) of Defendants, including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns. Upon reasonable request, the Receiver shall provide

the Defendants or their affiliates with information in the Receiver's possession that may be necessary for the Defendants or their affiliate(s) to prepare and file their tax returns. Notwithstanding the above, the Receiver shall be responsible for the preparation and filing of any tax returns required for the Receivership Estate but not the Defendants.

IT IS FURTHER ORDERED that the Receiver may at any time request from the Court that they be exonerated, discharged and released from his appointment as Receiver.

IT IS FURTHER ORDERED that no lien, claim, or other security interest in any Property shall be affected by this Order, nor shall the appointment impair Fannie Mae's right or ability to proceed with any judicial or nonjudicial foreclosure of such Property now posted or instituted or hereafter posted or instituted by Fannie Mae, with the express understanding that judicial or nonjudicial foreclosure of any of the Property may occur without further order of the Court in accordance with applicable state law.

IT IS FURTHER ORDERED that this Court shall retain exclusive jurisdiction and supervision of all matters concerning the Receiver, the receivership created hereby, the interpretation and implementation of this Order and the Properties.

IT IS FURTHER ORDERED that this receivership shall continue in effect until

further order of this Court.

SO ORDERED.

Signed August 21st, 2020.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE

AGREED AS TO FORM AND SUBSTANCE BY:

By: */s/ Keith M. Aurzada*
Keith M. Aurzada
Texas Bar No. 24009880
Jay L. Krystinik
Texas Bar No. 24041279
Devan J. Dal Col
Texas Bar No. 24116244
**REED SMITH LLP**
2501 N. Harwood St., Ste. 1700
Dallas, Texas 75201
T:  469.680.4200
F:  469.680.4299
kaurzada@reedsmith.com
jkrystinik@reedsmith.com
ddalcol@reedsmith.com

*Attorneys for Fannie Mae*

By: */s/ Samuel R. Maizel*
Samuel R. Maizel
*Pro Hac Pending*
Dentons US LLP
601 S. Figueroa Street
Suite 2500
Los Angeles, CA 90017-5704
T:  213.892.2910
samuel.maizel@dentons.com

Spencer Hamilton
Texas Bar No. 24087656
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
T:  214.259.0900
spencer.hamilton@dentons.com

*Attorneys for Defendants*